IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| FAHNDA HASHISH LEUENBERGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:15-cv-00036 |
| | ) | |
| ROSS SPICER, *etc.*, *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

In this employment case, plaintiff Fahnda Hashish Leuenberger claims that defendants

Ross Spicer, the Office of the Commonwealth's Attorney of Frederick County, Virginia (Office),

and Frederick County (County) discriminated and retaliated against her in violation of the Equal

Pay Act of 1963 (EPA) and Title VII of the Civil Rights Act of 1964. They now move to

dismiss her claims on various grounds under Federal Rules of Civil Procedure 12(b)(1), (b)(2),

and (b)(6). For the following reasons, the court will grant Spicer's motion in part and deny it in

part, and grant the Office's and County's motions.

## I.   BACKGROUND

The facts recited in this section and relied on below are taken from Leuenberger's

complaint and her Equal Employment Opportunity Commission (EEOC) discrimination charge,

a document integral to the complaint. *Zak v. Chelsea Therapeutics Int'l, Ltd*., 780 F.3d 597,

606–07 (4th Cir. 2015). For purposes of defendants' motions to dismiss, the court accepts

Leuenberger's factual allegations as true and construes them in the light most favorable to her.

*Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010); *Lovern v. Edwards*, 190

F.3d 648, 654 (4th Cir. 1999).

**A. Leuenberger works as a prosecutor in California, moves to Virginia, and takes a break from practicing law.**

Leuenberger began her career as a prosecutor in California in 1989, working in a district attorney's office. (Dkt. No. 1, Compl. ¶ 12.) There, she prosecuted both felonies and misdemeanors, gaining significant experience in all stages of criminal prosecution. (*Id.*) In July 1996, she relocated to Virginia and took a break from practicing law to stay at home with her children. (*Id.* ¶ 13.)

**B. Leuenberger returns to practicing law and begins working at the Office.**

Approximately 15 years later, in 2011, Leuenberger decided to return to practicing law and applied for an assistant Commonwealth's attorney position with the Office. (*Id.* ¶¶ 14–15.) Then-Commonwealth's Attorney Glenn Williamson hired her that July, and she started working the following month. (*Id.* ¶¶ 15–16.)

Leuenberger was initially assigned to work in juvenile and domestic relations (J&DR) district court, though she worked on some cases in general district court and circuit court. (*Id.* ¶¶ 17, 26.) She had full authority to accept or reject plea deals and to decide case strategy. (*Id.* ¶ 27.) In January and October 2012, Williamson evaluated her and rated her as "above expectations" in the work quality, communications, and work habits categories, and as "meets expectations" in the rest. (*Id.* ¶ 29.)

**C. The County partially funds Leuenberger's salary, manages her benefits, and maintains her employment records.**

Under Virginia law, the Commonwealth, through its Compensation Board, authorizes and funds assistant Commonwealth's attorney positions. Va. Code Ann. §§ 15.2-1626, -1627.1. Counties may, however, supplement the salaries of assistant Commonwealth's attorneys, *id.* § 15.2-1605.1, and many do so.

2

The Commonwealth and the County each funded a portion of Leuenberger's salary, and the County gave her a bonus in 2012. (Dkt. No. 1, ¶ 18.) In addition, the County, through either its board of supervisors or human resources department (or both), set and managed her benefits, paid her via direct deposit, maintained her employment records, and reviewed her performance for purposes of an employee-of-the-month award. (*Id.* ¶¶ 21–24.) Virginia law requires counties to provide (among other benefits) two weeks' paid vacation time and seven days' paid sick leave to employees of Commonwealth's attorneys. Va. Code Ann. § 15.2-1605.

The County also furnished the space, materials, and equipment used by the Office during Leuenberger's employment. (Dkt. No. 1 ¶ 25.) Under Virginia law, counties are obligated to provide "suitable space and facilities" for Commonwealth's attorneys to discharge their duties. Va. Code § 15.2-1638.

## D. Williamson retires, Spicer becomes Commonwealth's attorney, and Leuenberger shares duties with her male colleagues.

In November 2012, Williamson announced that he would retire as Commonwealth's attorney at the end of that year. (Dkt. No. 1, ¶ 30.) Upon Williamson's retirement, Spicer, then the deputy Commonwealth's attorney, became the acting Commonwealth's attorney. (*Id.*) He was elected to the position in November 2013. (*Id.* ¶¶ 9, 31.)

When Leuenberger first began working at the Office in August 2011, she worked with Assistant Commonwealth's Attorney Dennis McLoughlin in J&DR district court. (*Id.* ¶ 32) He was admitted to the Virginia State Bar in 2004 and had been working at the Office since 2007. (*Id.* ¶ 34.)

In December 2011, McLoughlin was reassigned to general district court, and Leuenberger took over his cases in J&DR district court. (*Id.* ¶¶ 33, 44.) While they were assigned to different courts, Leuenberger and McLoughlin shared responsibilities for all types of

probation violation hearings.  (*Id.* ¶ 45.)  And occasionally, they would split prosecutorial duties on individual cases.  (*Id.* ¶ 46.)

Leuenberger also worked with Assistant Commonwealth's Attorneys Andy Robbins and Nicholas Manthos during her time at the Office.  (*Id.* ¶¶ 47, 49.)  Robbins handled cases in general district court and circuit court.  (*Id.* ¶ 47.)  He became a member of the Virginia State Bar in 1993 and had been working at the Office since 2008.  (*Id.* ¶ 48.)  After Spicer became Commonwealth's attorney, Robbins was promoted to deputy Commonwealth's attorney.  (*Id.* ¶ 49.)

Manthos was hired in 2013 to fill the vacancy created by Williamson's retirement.  (*Id.* ¶ 49.)  He was responsible for cases in general district court and circuit court.  (*Id.* ¶ 50.)  He was admitted to the Virginia State Bar in 1989.  (*Id.* ¶ 50.)

Starting in October 2013, Leuenberger, Spicer, Robbins, and Manthos shared an assignment rotation in general district court.  (*Id.* ¶ 51.)  On alternating Tuesdays, either Leuenberger and Robbins or Spicer and Manthos would take all of the criminal cases on the court's docket.  (*Id.*)  During their weeks, Leuenberger and Robbins would take turns handling the misdemeanors and felonies.  (*Id.* ¶ 52.)

Prosecutors assigned to J&DR district court, general district court, and circuit court perform substantially similar duties and exercise substantially similar skills.  (*Id.* ¶¶ 36, 55.)  Among other tasks, they interview witnesses and victims, do legal research, offer plea agreements, participate in hearings, and try cases.  (*Id.* ¶ 37.)  Moreover, they have substantially similar caseloads, both in terms of numerosity and complexity.  (*Id.* ¶ 59.)

4

**E.  Leuenberger learns that she is paid less than her male colleagues and complains about the pay disparity.**

In August 2013, Leuenberger learned that she was being paid less than McLoughlin.  (*Id.* ¶ 62.)  He was making $74,200 per year, and she was making only $68,900.  (*Id.* ¶ 63.)  At some point, she also learned that she was earning $30,000 per year less than Robbins and Manthos.  (*Id.* ¶ 61.)

After learning that she made less than McLoughlin, Leuenberger went to Spicer and asked for a raise in August 2013.  (*Id.* ¶¶ 62, 64.)  She wanted a salary that matched or beat McLoughlin's.  (*Id.*)  She explained to Spicer that she should make as much or more than McLoughlin because of her additional prosecutorial experience.  (*Id.* ¶ 65.)  She further told Spicer that her lower pay for work comparable to that performed by McLoughlin violated the EPA and that she had spoken with the EEOC about her rights as an employee before taking her position.  (*Id.* ¶ 66.)

In addition to asking Spicer for a raise, Leuenberger requested a reassignment to general district court.  (*Id.* ¶ 70.)  She explained to him that she should be reassigned to that court because she had experience handling more than just J&DR district court cases from her time at both the Office and the district attorney's office in California.  (*Id.*)

Spicer did not respond to either of Leuenberger's requests during their August 2013 meeting.  (*Id.* ¶¶ 67, 71.)  Later that month, he evaluated her and rated her as "meets expectations" in all categories, which was a downgrade in some categories from her 2012 performance evaluations.  (*Id.* ¶¶ 29, 72.)  Before this evaluation, he had never indicated that he thought her performance had slipped.  (*Id.* ¶ 73.)  He did not give her a raise.  (*Id.* ¶ 69.)

**F. Leuenberger is reassigned to general district court.**

In September 2013, Spicer honored Leuenberger's request to be reassigned to general district court.  (*Id.* ¶ 75.)  But the move came with a couple of conditions: first, Leuenberger had to meet with Robbins to discuss any issues with her cases; and second, she had to get his permission before accepting or rejecting any plea agreements.  (*Id.* ¶ 77.)  Leuenberger tried to comply with these conditions.  (*Id.* ¶ 80.)

**G. Leuenberger is forced to resign.**

In December 2013, Spicer and Robbins met with Leuenberger, and Spicer told her that he had to let her go.  (*Id.* ¶¶ 82–83.)  Spicer and Robbins explained to her that they had received some complaints about her work from law enforcement officers, though they could not say what those complaints were.  (*Id.* ¶¶ 86–87.)  They further told her that she had not handled some of her recent cases as well as she could have, but they could not say what she could have done better.  (*Id.* ¶ 88.)  At the end of the meeting, Spicer told her that she could either submit a letter of resignation or be fired.  (*Id.* ¶ 90.)

A few days later, Leuenberger met with Spicer and Robbins again to rebut their criticisms and to ask Spicer to reconsider his decision to let her go.  (*Id.* ¶¶ 92–93.)  She told them that she had asked two supervisory law enforcement officers if there had been any complaints about her work from other law enforcement officers, and both responded no.  (*Id.* ¶ 94.)  Upon hearing this, Spicer conceded that he had received no such complaints and that he knew her "fans among law enforcement officers [were] legion."  (*Id.* ¶ 95.)  He nonetheless refused to reconsider his decision.  (*Id.* ¶ 96.)  If she would resign, however, he would allow her to stay on until June 30, 2014.  (*Id.* ¶ 97.)  Three days later, she submitted her resignation letter.  (*Id.* ¶ 98.)

From December 2013 until her resignation in June 2014, Leuenberger faced hostility and criticism from Spicer and Robbins. (*Id.* ¶ 100.) As a result, she felt significant emotional distress. (*Id.* ¶ 101.)

## H. Leuenberger files a discrimination charge with the EEOC.

In August 2014, Leuenberger filed a discrimination charge with the EEOC against the "Office of the Commonwealth's Attorney Frederick County," asserting discrimination and retaliation claims under the EPA and Title VII. (Dkt. No. 1, ¶ 5; Dkt. No. 12-5 at 3, EEOC Charge.) She alleged that Spicer discriminated against her based on her sex by paying her less than her male colleagues and that he retaliated against her for complaining about the pay disparity by forcing her to resign. (Dkt. No. 12-5 at 3.)

## I. Leuenberger files suit.

After the EEOC failed to resolve her charge within 180 days, Leuenberger filed this suit against defendants, making the same basic claims made in the charge. (Dkt. No. 1, ¶ 6.) In Counts One and Two, she alleges that defendants discriminated and retaliated against her in violation of the EPA. (*Id.* ¶¶ 104–20.) And in Counts Three and Four, she alleges that defendants discriminated and retaliated against her in violation of Title VII. (*Id.* ¶¶ 121–35.) Among other relief, she seeks back pay, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

Defendants now move to dismiss Leuenberger's claims on a range of grounds. Spicer moves to dismiss the Title VII claims under Rule 12(b)(1) for lack of subject matter jurisdiction, the Title VII and EPA claims under Rule 12(b)(2) for lack of personal jurisdiction, and the Title

VII claims and EPA discrimination claim under Rule 12(b)(6) for failure to state a claim.[1] The Office moves to dismiss the Title VII and EPA claims under Rule 12(b)(2), and the Title VII claims and EPA discrimination claim under Rule 12(b)(6). And the County moves to dismiss the Title VII claims under Rule 12(b)(1), and the Title VII and EPA claims under Rule 12(b)(6).

## II. DISCUSSION

### A. Spicer's and the County's Motions to Dismiss for Lack of Subject Matter Jurisdiction

Spicer and the County first move to dismiss Leuenberger's Title VII claims under Rule 12(b)(1) for lack of subject matter jurisdiction. They contend that the court lacks jurisdiction over those claims because, according to them, Leuenberger failed to exhaust her administrative remedies. In particular, they assert that she failed to name either of them in her EEOC charge as required under Title VII.[2]

Leuenberger concedes that she did not name Spicer or the County in her EEOC charge, but argues that her failure to do so is excused under one or more exceptions to Title VII's naming requirement. The court agrees as to Spicer, but not as to the County.

### 1. Standard of Review

A motion to dismiss under Rule 12(b)(1) tests the court's subject matter jurisdiction over a plaintiff's claim. The plaintiff bears the burden of establishing that jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In deciding a Rule 12(b)(1) motion, "the

---

[1] Though Spicer and the Office both move to dismiss Leuenberger's entire complaint under Rule 12(b)(6), they provide no argument for why Leuenberger fails to state an EPA retaliation claim. The court thus considers that part of their 12(b)(6) motion abandoned, pursuant to Local Rule 11(c)(1).

[2] In their opening briefs, defendants make another failure-to-exhaust argument: that Leuenberger failed to wait until she had received a right-to-sue letter from the EEOC before filing suit. This argument, as Spicer and the Office concede in their joint reply brief, is now moot because Leuenberger received a right-to-sue letter just a few days after defendants filed their motions to dismiss. Hence, whatever jurisdictional defect may have existed at the time she filed suit—and the court is not convinced that there was one—has been cured. *See Veliaminov v. P.S. Bus. Parks*, 857 F. Supp. 2d 589, 594 (E.D. Va. 2012) (holding that the plaintiff's receipt of a right-to-sue letter from the EEOC after the defendant moved to dismiss but before the court ruled on the motion cured any jurisdictional deficiency in the plaintiff's complaint).

district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). The court must, however, "view[] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern*, 190 F.3d at 654. Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R.*, 945 F.2d at 768).

### 2. The court has subject matter jurisdiction over Leuenberger's Title VII claims against Spicer, but not over those against the County.

Before a plaintiff may file suit under Title VII, she must exhaust her administrative remedies by filing a discrimination charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1). The charge must identify with specificity the parties involved in the alleged discrimination. *Jones v. Calvert Grp. Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). The scope of the plaintiff's right to bring suit is determined by the charge's contents. *Id.* Hence, a court usually has jurisdiction over only those claims made against parties named in the charge. *Mickel v. S.C. State Emp't Serv.*, 377 F.2d 239, 242 (4th Cir. 1967).

This naming requirement serves two purposes: "First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of [Title VII's] primary goal, the securing of voluntary compliance with the law." *Alvarado v. Bd. of Trs.*, 848 F.2d 457, 458–59 (4th Cir. 1988) (quoting *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969)).

But "Title VII does not require procedural exactness from lay complainants: 'EEOC charges must be construed with utmost liberality since they are made by those unschooled in the

9

technicalities of formal pleading.'" *Id.* at 460 (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir. 1975)).[3]  Accordingly, this and other courts have recognized exceptions to the naming requirement.  One of those exceptions, known as the "substantial identity exception," applies "where there is an 'identity of interests' between the unnamed and named party."  *Jamieson v. Valley Bank*, No. 7:05-cv-165, 2005 U.S. Dist. LEXIS 46138, at *6 (W.D. Va. Sept. 13, 2005); *see also Alvarado*, 848 F.2d at 461 (noting that, while the Fourth Circuit has not had an opportunity to decide whether to adopt the substantial identity exception, it has quoted with approval the following language from another court that has done so: "'where there is substantial, if not complete identity of parties before the EEOC and the court, it would require an unnecessarily technical and restrictive reading of [Title VII]' to deny jurisdiction" (quoting *Chastang v. Flynn & Emrich Co.*, 365 F. Supp. 957, 964 (D. Md. 1973))).

In this case, Leuenberger contends that Spicer and the County share an identity of interests with the Office—the only named party in her EEOC charge—and are therefore substantially identical for Title VII purposes.  To determine whether named and unnamed parties are substantially identical, this court applies the so-called *Glus* balancing test, which involves balancing the following four factors:

> (1) Whether the role of the unnamed party could, through reasonable effort by the complainant, be ascertained at the time of the filing of the EEOC complaint; (2) Whether under the circumstances, the interests of the named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance, it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) Whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interest of the unnamed party; and (4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

---

[3]  Though Leuenberger is an attorney, the court still construes her EEOC charge liberally because it appears that she has practiced only criminal law, which differs significantly from employment law.  But the court's conclusion as to the sufficiency of her charge would be the same under either a strict or liberal construction.  Thus, it is of no real significance which level of construction the court applies in this case.

10

*Jamieson*, 2005 U.S. LEXIS 46138, at *7 (quoting *Glus v. G. C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)). "[T]he issue whether it is allowable for a party that was unnamed during the EEOC proceedings to be sued in court, is a fact-intensive matter under the *Glus* balancing test." *Id.* at *8.

The court need not resort to the *Glus* balancing test to determine whether Leuenberger's failure to name Spicer is excused because he and the Office are not just substantially identical; they are legally identical. As discussed in greater detail below, *infra*, at 16, the Office is not a legally cognizable entity apart from Spicer himself as Commonwealth's attorney; the two are one and the same under Virginia law. The court therefore concludes that it has subject matter jurisdiction over Leuenberger's Title VII claims against Spicer, in spite of her failure to specifically name him in her EEOC charge. *See Alvarado*, 848 F.2d at 460–61 (holding that the plaintiff complied with Title VII's naming requirement with respect to an unnamed party (a college's board of trustees) because that party was legally identical to the named party (the college) under Maryland law).

The County is a different story, though. It and the Office are not legally identical; nor are they substantially identical under the *Glus* balancing test. As for the first factor—whether the role of the unnamed party could, through reasonable effort by the complainant, be ascertained at the time of the filing of the EEOC complaint—Leuenberger alleges no facts establishing that she was unable to determine the County's role when she filed her EEOC charge. Quite the contrary. She alleges facts that suggest she knew very well what the County's role was at that time. For instance, she alleges that the County paid her through its direct deposit system, managed her benefits, and maintained her employment records. The first factor, then, weighs against Leuenberger.

11

The second factor—whether under the circumstances, the interests of the named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance, it would be unnecessary to include the unnamed party in the EEOC proceedings—likewise goes against Leuenberger. She alleges no facts showing that the Office's and the County's interests were so similar that, for purposes of voluntary conciliation and compliance, it was unnecessary to include the County in the EEOC proceedings. On the contrary, she alleges facts establishing that the Office and the County had very different roles, and thus were both needed for voluntary conciliation and compliance. For example, she alleges that the Office, through the Commonwealth's attorney (Williamson or Spicer), was responsible for hiring her, determining her assignments, evaluating her work, and terminating her, whereas the County was responsible for managing her benefits and maintaining her employment records. Because the Office and the County played such different roles in Leuenberger's employment under the alleged facts, it is hard to see how the EEOC's proceedings could have been successful without both the Office and the County participating in them.

Leuenberger fares no better with the third factor—whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interest of the unnamed party. She alleges no facts showing that the County did not suffer any prejudice as a result of not being included in the EEOC proceedings.

The fourth and final factor—whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party—also tips against Leuenberger. She alleges no facts establishing that the County told her that its relationship with her was to be through the Office. Quite the opposite. She alleges facts showing that she was to work directly with the County if she had any problems with what it did.

For instance, she alleges that the County, not the Office, managed her benefits and maintained her employment records. These alleged facts suggest that, if she had a problem with her benefits or employment records, then she should have seen the County, not the Office, about it.

Since none of the factors of the *Glus* balancing test weighs in her favor, Leuenberger has failed to establish that the substantial identity exception to Title VII's naming requirement applies to the County.

Leuenberger further contends, though, that her failure to name the County in her EEOC charge is excused under another exception to Title VII's naming requirement known as the "actual notice exception." That exception applies where the unnamed party had notice of the EEOC proceedings and participated in them. *Bostic v. Wall*, 588 F. Supp. 994, 997 (W.D.N.C. 1984), *aff'd*, 762 F.2d 997 (4th Cir. 1985). But Leuenberger alleges no facts showing that the County had notice of—much less participated in—the EEOC proceedings. Indeed, her complaint is altogether silent about the EEOC proceedings. Thus, she has also failed to establish that the actual notice exception applies to the County.

Because Leuenberger failed to name the County in her EEOC charge, and because she has failed to show that her failure to do so is excused under any exception to Title VII's naming requirement, the court concludes that it lacks subject matter jurisdiction over her Title VII claims against the County.

* * *

The court will deny Spicer's Rule 12(b)(1) motion, but will grant the County's and dismiss Leuenberger's Title VII claims against the County.

**B. Spicer's and the Office's Motions to Dismiss for Lack of Personal Jurisdiction**

Spicer and the Office next move to dismiss Leuenberger's Title VII and EPA claims under Rule 12(b)(2) for lack of personal jurisdiction. They contend that neither of them is *sui juris*—i.e., capable of being sued—under Virginia law, and that thus the court lacks personal jurisdiction over them. The court agrees as to the Office, but not as to Spicer.

### 1. *Standard of Review*

A motion to dismiss under Rule 12(b)(2) challenges the court's personal jurisdiction over a defendant. The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). But when, as here, the "court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). In determining whether the plaintiff has made such a showing, the "court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

### 2. *Spicer is capable of being sued, but the Office is not.*

Virginia law controls whether Spicer and the Office are capable of being sued. Fed. R. Civ. 17(b). Leuenberger sues Spicer in his official capacity as Commonwealth's attorney. Under Virginia law, Commonwealth's attorneys are independent constitutional officers. Va. Const. art. VII, § 4. Like other such officers (e.g., sheriffs, treasurers, commissioners of revenue), Commonwealth's attorneys "do not hold their offices by virtue of authority of the General Assembly or by virtue of authority of a municipality"; they "hold their offices by virtue of the [Virginia] constitution, which provides that [they] shall be elected by the qualified voters of the county and that their duties and compensation shall be prescribed by general law." *Hilton*

*v. Amburgey*, 96 S.E.2d 151, 152 (Va. 1957); *see also Burnett v. Brown*, 72 S.E.2d 394, 395 (Va. 1952) (noting that Commonwealth's attorneys are independent constitutional officers).

Courts have long recognized, either explicitly or implicitly, that Virginia constitutional officers are capable of being sued. *E.g.*, *Weth v. O'Leary*, 796 F. Supp. 2d 766, 771 (E.D. Va. 2011) (treasurer); *Hussein v. Miller*, 232 F. Supp. 2d 653, 656 (E.D. Va. 2002) (commissioner of revenue); *Brickey v. County of Smyth*, 944 F. Supp. 1310, 1312–13 (W.D. Va. 1996) (sheriff); *Roop v. Whitt*, 768 S.E.2d 692, 694–96 (Va. 2015) (sheriff); *Marshall v. Winston*, 389 S.E.2d 902, 903–05 (Va. 1990) (sheriff). Commonwealth's attorneys are no exception. In *Easter v. Virginia*, the U.S. District Court for the Eastern District of Virginia explicitly acknowledged that a Commonwealth's attorney is capable of being sued under Virginia law. No. 4:05-cv-162, 2006 U.S. Dist. LEXIS 101668, at *9 (E.D. Va. Aug. 5, 2006).

Moreover, the Virginia Code contemplates that Commonwealth's attorneys can and will be sued. For instance, § 15.2-1606 provides for the payment of a legal defense for a Commonwealth's attorney (as well as other constitutional officers) "[i]n the event [he] is made defendant in any civil action arising out of his official duties and does not have legal defense under the insurance of his office." It is hard to believe that the General Assembly would go to the trouble—and expense—of providing for a legal defense for Commonwealth's attorneys if they were not capable of being sued in the first place.

Accordingly, pursuant to these authorities, the court concludes that Spicer is capable of being sued under Virginia law.[4]

---

[4] This conclusion raises no Eleventh Amendment immunity concerns here. *See* U.S. Const. amend. XI. While Commonwealth's attorneys are generally entitled to Eleventh Amendment immunity as arms of the state, *Savage v. County of Stafford*, No. 1:09-cv-1328, 2010 U.S. Dist. LEXIS 44030, at *8–10 (E.D. Va. May 4, 2010), Congress has abrogated that immunity for Title VII and EPA suits, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 457–57 (1976) (Title VII); *Varner v. Ill. State Univ.*, 150 F.3d 706, 717 (7th Cir. 1998) (EPA); *Usery v. Charleston Cty. Sch. Dist.*, 558 F.2d 1169, 1171 (4th Cir. 1977) (EPA).

15

The same is not true of the Office, however.  Courts have long held that the offices of Virginia constitutional officers are not capable of being sued under Virginia law because they are not legally cognizable entities apart from the officers themselves in their official capacities.  *E.g.*, *Weth*, 796 F. Supp. 2d at 771 (treasurer's office); *Francis v. Woody*, No. 3:09-cv-235, 2009 U.S. Dist. LEXIS 43599, at *16–17 (E.D. Va. May 22, 2009) (sheriff's office); *Hussein*, 232 F. Supp. 2d at 656 (commissioner of revenue's office).  The Virginia Constitution creates, and the Virginia Code empowers, officers—not offices.  *Hussein*, 232 F. Supp. 2d at 656; *Blankenship v. Warren County*, 918 F. Supp. 970, 974 n.4 (W.D. Va. 1996); *Roop*, 768 S.E.2d at 695.

The offices of Commonwealths' attorneys are no different.  In *Easter*, the Eastern District not only recognized that a Commonwealth's attorney is capable of being sued, but it also held that his office is not.  2006 U.S. Dist. LEXIS 101668, at *9.  "Under Virginia law," it explained, "the Commonwealth's Attorney is a constitutional officer and is the appropriate individual against whom to bring suit, not the Commonwealth's Attorney Office."  *Id.*

In keeping with these precedents, then, the court concludes that the Office is not capable of being sued under Virginia law.

* * *

The court will deny Spicer's Rule 12(b)(2) motion, but will grant the Office's and dismiss all of Leuenberger's claims against the Office.

## C.  Spicer's and the County's Motions to Dismiss for Failure to State a Claim

Finally, Spicer and the County move to dismiss most or all of Leuenberger's claims under Rule 12(b)(6) for failure to state a claim.  Spicer contends that Leuenberger fails to state a

16

Title VII discrimination or retaliation claim or an EPA discrimination claim against him.[5]  And the County argues that Leuenberger fails to state an EPA discrimination or retaliation claim against it.[6]  The court agrees in part and disagrees in part with Spicer, and agrees with the County.

### 1.  Standard of Review Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint to determine whether the plaintiff has properly stated a claim.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Basically, the plaintiff must "nudge [his] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether the plaintiff has met this plausibility standard, the court must take as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint.  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards*, 178 F.3d at 244, but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  If there is a conflict between the bare allegations of

---

[5] The Office likewise moves to dismiss Leuenberger's Title VII discrimination and retaliation claims and EPA discrimination claim under Rule 12(b)(6).  The court need not, however, decide the merits of that motion in light of its ruling on the Office's Rule 12(b)(2) motion.

[6] The County also moves to dismiss Leuenberger's Title VII discrimination and retaliation claims under Rule 12(b)(6).  But the court need not determine the merits of that motion given its ruling on the County's Rule 12(b)(1) motion.

the complaint and any attached or incorporated document, then the document prevails.  *See Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

### 2.  *Consideration of Extrinsic Documents*

Spicer and the County attach numerous documents to their supporting briefs.  They ask the court to consider these documents—which include (among other documents) a declaration from the County's human resources director, Leuenberger's EEOC charge, and descriptions of Virginia's trial courts—in ruling on their Rule 12(b)(6) motions.  Leuenberger, on the other hand, asks the court to disregard all of the documents except the charge, which she attaches to one of her opposing briefs.

Typically, when a defendant moves to dismiss under Rule 12(b)(6), a court is "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"  *Zak*, 780 F.3d at 606 (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)).  If a court goes beyond these documents during the pleading stage of litigation, then it "improperly converts the motion to dismiss into a motion for summary judgment."  *Id.*  "Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co.,* 637 F.3d at 448.

Accordingly, a court should generally focus its "inquiry on the sufficiency of the facts relied upon by the plaintiff[] in the complaint."  *Zak*, 780 F.3d at 606.  It may, however, consider a document attached to a motion to dismiss when the document is "'integral to and explicitly relied on in the complaint,'" and when the document's authenticity is unchallenged.  *Id.* (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).  A court may also "consider facts and documents subject to judicial notice without converting the motion

to dismiss into one for summary judgment" so long as they are "'generally known within the court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201).

Here, the only document attached to Spicer's and the County's supporting briefs that falls within these parameters is Leuenberger's EEOC charge. None of the other documents meets the requirements for consideration at the motion-to-dismiss stage. The court thus considers only the charge in deciding Spicer's and the County's Rule 12(b)(6) motions, and excludes all of the other documents.

### 3. *Leuenberger fails to state a Title VII discrimination or retaliation claim against Spicer.*

Spicer argues that Leuenberger fails to state a Title VII discrimination or retaliation claim against him because he is not an employer within the meaning of the Act. The court agrees.

As relevant here, Title VII prohibits an employer from discriminating against an employee on the basis of sex or from retaliating against an employee for complaining about such discrimination. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). For purposes of Title VII, an "employer" (as relevant here) is a "a person engaged in an industry affecting commerce who has *fifteen or more employees* for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *Id.* § 2000e(b) (emphasis added). And an "employee" is "an individual employed by an employer." *Id.* § 2000e(f). The existence of an employer-employee relationship is a substantive "element of [a] plaintiff's [Title VII] claim, not a jurisdictional issue." *Murphy-Taylor v. Hoffman*, 968 F. Supp. 2d 693, 724 (D. Md. 2013) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)).

In this case, Leuenberger does not allege that Spicer had 15 or more employees during her employment. Instead, she merely alleges that he was her "'employer' within the meaning of

19

Title VII." (Dkt. No. 1, ¶¶ 122, 130.) Such a conclusory allegation is insufficient to defeat a motion to dismiss. *Twombly*, 550 U.S. at 555.

Although Leuenberger does name a handful of her former colleagues at the Office of the Commonwealth's Attorney, she does not name enough for the court to infer that Spicer had the requisite number of employees to be considered an employer under Title VII. Recognizing this deficiency, Leuenberger contends that Spicer's employees should be aggregated with Frederick County's for purposes of meeting Title VII's 15-employee requirement and that, when so aggregated, they total at least 15.[7]

In some circumstances, courts have treated two entities as a single or joint employer for purposes of determining whether the 15-employee requirement was satisfied. *E.g.*, *Avington v. Metro. Tulsa Urban League*, 603 F. App'x 662, 663 (10th Cir. 2015); *Sanford v. Main St. Baptist Church Manor, Inc.*, 448 F. App'x 488, 491–92 (6th Cir 2011); *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 201–03 (2d Cir. 2005); *Hutchinson v. Am. Family. Mut. Ins. Co.*, No. CV-11-00785, 2013 U.S. Dist. LEXIS 46897, at *24–33 (D. Ariz. Apr. 1, 2013). While the Fourth Circuit has recognized that two entities may be considered as a single or joint employer for purposes of assigning liability under Title VII, *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 409 (4th Cir. 2015); *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999), *abrogated on other grounds by Arbaugh*, 546 U.S. at 516, it does not appear that the court has yet weighed in on whether two entities may be so considered for purposes of meeting the 15-employee requirement. Even assuming the propriety of applying the "single employer" or "joint employer" doctrine for such purposes, however, the court does not think that either doctrine is applicable in this case.

---

[7] Leuenberger does not allege how many employees Frederick County had either. Yet the court thinks it reasonable to infer that the County had a sufficient number of employees that, if combined with Spicer's, would total at least 15. Hence, the court does not dismiss Leuenberger's argument out of hand.

*a. Single Employer Doctrine*

Under the single employer doctrine, a "'parent company and its subsidiary can be considered a single employer for purposes of Title VII liability.'" *Butler*, 793 F.3d at 408 n.3 (quoting *Murphy-Taylor*, 968 F. Supp. 2d at 725). But "[t]he fact of a parent-subsidiary relationship between the two companies is not sufficient, as a matter of law, to impute liability to [the parent] for the alleged discriminatory actions of its subsidiary." *United States v. Universal Health Servs*., No. 1:07-cv-54, 2010 U.S. Dist. LEXIS 116432, at *18 (W.D. Va. Oct. 31, 2010) (alterations in original) (quoting *Gordon v. Fort Mill Ford, Inc*., No. 0:07-992, 2009 U.S. Dist. LEXIS 24164, at *8 (D.S.C. Mar. 23, 2009)). Instead, "[a] parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity." *Id.* (quoting *Johnson v. Flowers Indus., Inc*. 814 F.2d 978, 980 (4th Cir. 1987)).

In making this determination, this court has considered the following four factors: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Universal Health Servs*., 2010 U.S. Dist. LEXIS 116432, at *19. Though "no single factor is conclusive, the control of labor relations is the most significant factor for defining whether the parent qualifies as an 'employer' for Title VII purposes." *Id.* at *19–20.

Here, the court does not believe that the single employer doctrine is applicable, first and foremost, because no parent-subsidiary relationship exists between the County and Spicer. As discussed above, *supra*, at 16, a Commonwealth's attorney is an independent constitutional officer under Virginia law who serves only at the pleasure of the voters who elect him.

Accordingly, a county government is not a parent of a Commonwealth's attorney, and a Commonwealth's attorney is not a subsidiary of a county.

The Supreme Court of Virginia recently reaffirmed the independence of a constitutional officer from a county. *Roop*, 768 S.E.2d at 692. In *Roop*, it addressed whether a sheriff's deputy is a "local employee" within the meaning of a Virginia statute that prohibited such an employee from being retaliated against for expressing an opinion on a matter of public concern. *Id.* at 694–95. It held that he is not for two reasons.

First, a deputy is an employee of a sheriff, not a county. *Id.* at 695. "A sheriff's deputy," the court explained, "is appointed only by the sheriff, who may remove a deputy subject only to a few statutory reasons." *Id.* What's more, the court continued, "[t]here is no privity of obligation existing between a deputy and the board of supervisors of a county. The supervisors . . . have no say as to whom the sheriff shall appoint his deputy; they have no control over his conduct; they have no power to remove him from office nor any control over the duration of his term thereof . . . ." *Id.* (alteration and omissions in original) (quoting *Rockingham County v. Lucas*, 128 S.E. 574, 576 (Va. 1925)).

And second, a sheriff is not an agent of or subordinate to a county. *Id.* at 695–96. "'[W]hile constitutional officers may perform certain functions in conjunction with' local government," the court reasoned, "they are neither agents nor subordinate to local government. The local government has no control over their work performance. Similarly, constitutional officers are elected by voters for prescribed terms. They are neither hired nor fired by the locality." *Id.* at 696 (quoting *Carraway v. Hill*, 574 S.E.2d 274, 276 (Va. 2003)).

As with a deputy sheriff, there is no privity of obligation between an assistant Commonwealth's attorney and a county's board of supervisors. *See* Va. Code Ann. §§ 15.2-

22

1626, -1627(A), -1627.1.  The supervisors have no say as to whom the Commonwealth's attorney appoints as his assistant Commonwealth's attorney.  *See id.* §15.2-1626.  Nor do they have control over the conduct of an assistant Commonwealth's attorney once appointed or power to remove her from office.  *See id.*; *id.* § 1627(A)–(B).  Moreover, as with a sheriff, the supervisors have no control over the work of a Commonwealth's attorney.  *See id.; id.* § 1627(A)–(B).  Nor can they fire him.  *See id.* §§ 15.2-1626, 24.2-230.

Since a county's board of supervisors has no control over a Commonwealth's attorney or his assistant, it is difficult to see how a parent-subsidiary relationship could even exist between a county and a Commonwealth's attorney.  But even if such a relationship could exist—and Leuenberger cites no authority for her position that it can, much less that it exists here—the court would still find that the single employer doctrine is inapplicable under the circumstances of this case.

While Leuenberger alleges facts showing that there was some interrelation between the County's and Spicer's operations such as the management of benefits and the maintenance of employment records, she does not allege facts establishing that the County controlled Spicer's employment decisions or so completely dominated his office so that the two were in essence the same entity.  On the contrary, she alleges facts showing that Spicer was the only one responsible for the most important aspects of labor relations—hiring, supervising, evaluating, disciplining, and firing.

Because the County did not control Spicer's employment decisions or so completely dominate his office, even if a parent-subsidiary relationship existed between the County and Spicer, they are not a single employer.  The court thus concludes that the single employer doctrine does not apply here.

Case 5:15-cv-00036-EKD-JCH   Document 53   Filed 01/28/16   Page 23 of 28   Pageid#: 396

*b. Joint Employer Doctrine*

In accordance with the joint employer doctrine, two entities "can be considered joint employers and therefore both be liable under Title VII if they 'share or co-determine those matters governing the essential terms and conditions of employment." *Butler*, 793 F.3d at 408 (quoting *Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc)). Put differently, "courts look to whether both entities 'exercise significant control over the same employees.'" *Id.* (quoting *Bristol*, 312 F.3d at 1218). The ground for finding that two entities "are 'joint employers' is that 'one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Id.* (quoting *Torres-Negron v. Merck & Co.*, 488 F.3d 34, 40 n.6 (1st Cir. 2007)).

Whether two entities are joint employers is a fact-intensive inquiry. *Id.* at 413. In making this determination, the Fourth Circuit has held that courts should consider the following nine factors:

> (1) authority to hire and fire the individual;
>
> (2) day-to-day supervision of the individual, including employee discipline;
>
> (3) whether the putative employer furnishes the equipment used and the place of work;
>
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
>
> (5) the length of time during which the individual has worked for the putative employer;
>
> (6) whether the putative employer provides the individual with formal or informal training;
>
> (7) whether the individual's duties are akin to a regular employee's duties;

24

(8) whether the individual is assigned solely to the putative employer; and

(9) whether the individual and putative employer intended to enter into an employment relationship.

*Id.* at 414. Though none of these factors is dispositive, the Fourth Circuit has stressed that the most important are, first, which entity has the power to hire and fire the putative employee; second, which entity is responsible for the day-to-day supervision of the putative employee; and third, which entity furnishes the equipment used and the place of work of the putative employee. *Id.* at 414–15.

Like the single employer doctrine, the joint employer doctrine is ill suited to the facts of this case because it does not involve the situation where one entity is using an employee of another entity. Rather, it involves an employee who works only for one entity but who has some aspects of her employment managed by another entity. Under the alleged facts, Spicer or Williamson was responsible for hiring Leuenberger, supervising her, giving her assignments, setting her pay, evaluating her, disciplining her, and firing her. These are all factors indicative of an employer-employee relationship. The County, on the other hand, was responsible only for supplementing her salary, if it chose to do so; managing her benefits; disbursing her pay via direct deposit; maintaining her employment records; and providing her with space. With the exceptions of the salary supplement and space, these are all factors indicative of a payroll administrator. They do not suggest that the County had any control over Leuenberger's work. Accordingly, the court concludes that the joint employer doctrine does not apply here.

\* \* \*

Because Spicer and the County are not a single or joint employer, their employees cannot be aggregated for purposes of meeting Title VII's 15-employee requirement. Leuenberger therefore fails to allege that Spicer has 15 or more employees, and her Title VII claims against

him must be dismissed.  The court will accordingly grant his 12(b)(6) motion and dismiss those claims.

### 4. *Leuenberger states an EPA discrimination claim against Spicer*.

Spicer also contends that Leuenberger fails to state an EPA discrimination claim against him.  The court disagrees.

To state an EPA discrimination claim, a plaintiff must allege sufficient facts to show "(1) that her employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions."  *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 613 (4th Cir. 1999).

Here, Leuenberger alleges sufficient facts to establish each of these elements. She alleges that Spicer paid her and McLoughlin different salaries; that they held jobs requiring the same skill, effort, and responsibility; and that they performed those jobs under similar working conditions.   The court thus concludes that she states an EPA discrimination claim and will deny Spicer's Rule 12(b)(6) motion to dismiss that claim.

### 5. *Leuenberger fails to state an EPA discrimination or retaliation claim against the County.*

The County argues that Leuenberger fails to state an EPA discrimination or retaliation claim against it because it was not her employer within the meaning of the Act.  Leuenberger responds that the County and Spicer were joint employers for purposes of the EPA and that therefore they are both subject to liability under the Act.[8]  The Court agrees with the County.

---

[8] Other than an "upon information and belief" allegation that Frederick County's board of supervisors "approved the compensation paid to employees of the Office of the Commonwealth's Attorney" (Dkt. No. 1, ¶ 20), Leuenberger makes no allegations that the County had any hand in determining her salary.  Nor does she make any allegations that the County played any role in terminating her employment.  Indeed, she does not even allege that the

The EPA prohibits any "employer" from discriminating "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). "As part of the [Fair Labor Standards Act] the EPA utilizes the FLSA's enforcement mechanisms and employs its definitional provisions." *Earl v. Norfolk State Univ.*, No. 2:13-cv-148, 2014 U.S. Dist. LEXIS 162066, at *9 (E.D. Va. 2014). Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). And an "employee" is "any individual employed by an employer." *Id.* § 203(e)(1). These definitions broaden "the meaning of 'employee' to cover some [workers] who might not qualify as such under a strict application of traditional agency [or contract] law principles." *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (alterations in original) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)).

"Separate persons or entities that share control over an individual worker may be deemed joint employers under the FLSA." *Id.* at 305. A joint employment exists in the following situations:

(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

---

County was aware of her complaint about being paid less than McLoughlin. Hence, her EPA claims against the County appear to rest entirely on the notion that it was her joint employer with Spicer.

*Id.* at 306 (quoting 29 C.F.R. § 791.2(b)).

In this case, while Leuenberger alleges facts showing that the County had some hand in managing her benefits and maintaining her employment records, she does not allege facts establishing that it and Spicer shared her or that she was under their common control. On the contrary, she alleges facts showing that only Spicer controlled her. It was he or his predecessor Williamson who bore the responsibility of hiring her, supervising her, giving her assignments, setting her pay, evaluating her, disciplining her, and firing her.

The court therefore concludes that the County was not Leuenberger's employer under the EPA, and will grant its Rule 12(b)(6) motion to dismiss her EPA discrimination and retaliation claims against it and dismiss those claims.

### III. CONCLUSION

For the following reasons, the court will grant Spicer's motion to dismiss in part and deny it in part, and grant the Office's and County's motions. The court will, however, grant Leuenberger 14 days to amend her complaint as to her Title VII claims against Spicer and her EPA claims against the County, but only to the extent that she can remedy the deficiencies in those claims, as set forth above.[9]

An appropriate order will follow.

Entered: January 28, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[9] Though the court will give Leuenberger a chance to cure the deficiencies in her EPA claims against the County, it questions whether she will be able to do so given the specific allegations in her complaint.

28